1  **THE MILLS LAW FIRM**
   Robert W. Mills, Esq. (Bar No. 062154)
2  rwm@millslawfirm.com
   Joshua D. Boxer, Esq. (Bar No. 226712)
3  josh@millslawfirm.com
   Corey B. Bennett, Esq. (Bar No. 267816)
4  corey@millslawfirm.com
   880 Las Gallinas Avenue, Suite 2
5  San Rafael, California 94903
   Telephone: (415) 455-1326
6  Facsimile: (415) 455-1327
              - and -
7  **CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
   Stephen Gardner (pending *pro hac vice*)
8  sgardner@cspinet.org
   Amanda Howell (pending *pro hac vice*)
9  ahowell@cspinet.org
   5646 Milton Street, Suite 211
10 Dallas, Texas 75206
   Telephone: (214) 827-2774
11 Facsimile: (214) 827-2787

12 *Attorneys for Plaintiffs Michael Fishman,*
   *Alvin Kupperman, Barbara Bronson,*
13 *and the Proposed Class*

14              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
15

16 BARBARA BRONSON, MICHAEL      )   Case No. CV 12-04184 CRB
   FISHMAN, and ALVIN KUPPERMAN  )
   on behalf of themselves        )   **FIRST AMENDED CLASS**
17                                )   **ACTION COMPLAINT**
   and all others similarly situated,  )   Cal. Bus. & Prof. Code §17200
18                                )   *et seq.* and §17500 *et seq.*,
                      Plaintiffs,  )   Cal. Civ. Code §1750 *et seq.*,
19                                )   Unjust Enrichment, and Breach of Implied
              vs.                 )   Warranty of Merchantability.
20                                )
   JOHNSON & JOHNSON INC. and     )   **DEMAND FOR JURY TRIAL**
21 MCNEIL NUTRITIONALS, LLC,      )
                                  )
22                  Defendants.   )

              FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Barbara Bronson, Michael Fishman, and Alvin Kupperman (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Johnson & Johnson, Inc. and McNeil Nutritionals, LLC (collectively "Defendants"), demanding a trial by jury, and allege as follows:

## NATURE OF THE CASE

1.      This is a proposed class action on behalf of California residents seeking redress for Defendants' deceptive practices[1] in misrepresenting the health benefits of varieties of Defendants' fortified no-calorie sweeteners – Splenda Essentials[2] – in violation of California's consumer protection laws from four years prior to the filing date of this Complaint ("Class Period").

2.      Consumers are increasingly health-conscious. In an effort to maintain or lose weight, many consumers try to "speed up" their metabolism, or increase their fiber intake to feel fuller longer. Some consumers aim to prevent illness and disease by increasing their antioxidant intake.

3.      These health concerns motivate the purchase and consumption of Splenda Essentials, from which Defendants significantly profit. Defendants command a premium price for Splenda Essentials by distinguishing it from regular Splenda and other no-calorie

---

[1] The terms "deceptive," "deceptively," and "deception" encompass other descriptive terms, including various forms of the words: mislead, misrepresent, untrue, unfair, false, disparage, and unlawful. All of these terms are referenced in California's Civil Code and California's Health and Safety Code.

[2] For purposes of this Complaint, the phrase "Splenda Essentials" refers collectively to the three product varieties: Splenda Essentials with B vitamins, Splenda Essentials with Antioxidants, and Splenda Essentials with Fiber.

1   sugar substitutes, and by "marketing"[3] it as a sweetener that "gives you a small boost of

2   healthy nutrients."[4] On average, Defendants charge roughly 25% more for their Splenda

3   Essentials line than original Splenda.[5]

4       4.    Defendants' marketing campaign for Splenda Essentials deceptively promotes

5   the three varieties as healthful, no-calorie sweeteners that are fortified with antioxidants, B

6   vitamins, or fiber.  Each variety misrepresents its contents by claiming to possess certain

7   characteristics, uses, or benefits that it does not have. Furthermore, the Federal Trade

8   Commission requires a higher standard of proof in order to permit Defendants to assert

9   health claims about Splenda Essentials.[6]

10       5.    Defendants' misrepresentations about Splenda Essentials – ranging from a

11   product name that cues consumers to think this product is a *necessity*, to packaging that

12   features foods that provide the health benefit touted in each variety – bombard consumers

13   with a message of purported health, and draw consumer attention away from the

14   differences between artificially added nutrients and those found in whole foods. Reasonable

15   consumers should not be forced to look beyond the deceptive representations on Splenda

16   Essentials' labels and marketing materials to discover the truth about fortified nutrients.

---

17
18   [3] "Marketing" includes all forms of advertising in all forms of media, including and without limitation to print advertisements, television and radio commercials, packaging and product labels, viral marketing, incentives, and websites.

19   [4] Splenda Essentials Home Page, www.splenda.com/essentials (last visited July 21, 2012).

20   [5] Splenda Sweetener Store Webpage, www.splendastore.com/category/getsplenda/ packets.do?nType=2 (last visited July 21, 2012), *and* www.splendastore.com/ category/splenda-+essentials-.do?nType=1 (last visited July 21, 2012).

21
22   [6] Order to Show Cause and Order Modifying Order, *In the matter of Kellogg Company*, No. C-4262 (Federal Trade Commission, May 28, 2010), *available at* www.ftc.gov/os/caselist/0823145/100602kelloggorder.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT

1    Even if consumers review the product's nutrition panel and ingredients list, this may not

2    help them decipher the difference between health benefits provided by added nutrients

3    versus benefits provided from food sources like whole fruits, vegetables, and grains.

4    Reasonable consumers should be able to trust that representations about Splenda Essentials

5    in their marketing materials are truthful and accurately describe the contents of each packet.

6                                    **JURISDICTION AND VENUE**

7            6.      This court has jurisdiction over all causes of action asserted herein, pursuant

8    to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper

9    conduct, including the dissemination of deceptive information regarding the quality of

10   Splenda Essentials, occurred within this District.

11           7.      Defendants are authorized to do business in California, have sufficient

12   minimum contacts with California, and otherwise have intentionally availed themselves of

13   the markets in California through the marketing and sale of Splenda Essentials in

14   California, to render the exercise of jurisdiction by this Court permissible under traditional

15   notions of fair play and substantial justice.

16                                          **THE PARTIES**

17   **Plaintiffs**

18           8.      Plaintiffs Barbara Bronson, Michael Fishman, and Alvin Kupperman

19   ("Plaintiffs") are residents of California.  Michael Fishman and Alvin Kupperman live Palm

20   Springs, while Barbara Bronson lives in San Rafael. Plaintiffs collectively purchased Splenda

21   Essentials with B vitamins, Splenda Essentials with Antioxidants, and Splenda Essentials

22   with Fiber during the Class Period, within four years of the filing date of this Complaint. On

a daily basis, Plaintiffs Fishman and Kupperman used roughly 10 packets of Splenda Essentials to sweeten foods like coffee, yogurt, and cereal. Plaintiff Barbara Bronson used Splenda Essentials for her morning coffee and also provided it to the clients in her salon. Plaintiffs purchased the three varieties of Splenda Essentials at their premium price at Albertsons, Pavilions, Safeway, and Ralph's grocery stores in California.

9.      Plaintiffs relied on written misrepresentations present on all varieties of the Splenda Essentials packaging. The metabolic claims on the Splenda Essentials with B vitamins variety led Plaintiffs to believe the product would give them a "faster metabolism," help them maintain their weight, and even encourage weight loss.

10.      Plaintiffs relied heavily on the deceptive health claims in Splenda Essentials with Antioxidants. Product packaging that featured fruits rich in antioxidants, like strawberries, raspberries, and blueberries, led Plaintiffs to believe that Splenda with Antioxidants provided health benefits related to disease and illness prevention.  The packaging copy, "20% Daily Value of Antioxidants," when displayed next to pictures of fruit, led Plaintiffs to believe that packets of Splenda Essentials with Antioxidants would provide the same health benefits as antioxidants found in whole foods.

11.      Plaintiffs relied heavily on the deceptive health claims in Splenda Essentials with Fiber.  Packaging that featured foods high in dietary fiber, like dark-grained cereals, strawberries, and apples with their skin intact, led Plaintiffs to believe they would receive the health benefits associated with dietary fiber in whole foods.  Had Plaintiffs known the truth that the statements they relied on were deceptive, they would not have purchased Splenda Essentials.

**Defendants**

12.     Johnson & Johnson, Inc. ("Johnson & Johnson") is a New Jersey corporation headquartered in New Brunswick, New Jersey. Johnson & Johnson is an American multinational consumer packaged goods manufacturer. During 2012, Johnson & Johnson expanded its sweetener offerings to include three new varieties of Splenda: Splenda Essentials with B vitamins, Splenda Essentials with Fiber, and Splenda Essentials with Antioxidants.

13.     Defendant McNeil Nutritionals, LLC ("McNeil Nutritionals") is a wholly owned subsidiary of Johnson & Johnson, and sells the sucralose branded sweeteners Splenda and Splenda Essentials. Defendant McNeil Nutritionals is headquartered in Fort Washington, Pennsylvania.

## GENERAL ALLEGATIONS

14.     Defendants fall far short of satisfying the Federal Trade Commission's ("FTC") substantiation requirements in order to make health-related claims to market their products.

> The FTC requires that the Defendant ". . . possess[] and [rely] on competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence… [C]ompetent and reliable scientific evidence means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results."[7]

---

[7] Order to Show Cause and Order Modifying Order, *In the matter of Kellogg Company*, No. C-4262 (Federal Trade Commission, May 28, 2010), *available at* www.ftc.gov/os /caselist/0823145/100602kelloggorder.pdf.

In the absence of reliable scientific evidence, the Defendants' claims misrepresent to consumers the benefits of fiber, antioxidants, and B vitamins found in their products, and are thus deceptive under California's consumer protection laws.

**Defendants' Marketing Materials Claim That Splenda Essentials Provide Health Benefits to Consumers**

15.     Defendants deceive consumers into believing that Splenda Essentials sweeteners provide health benefits by touting B vitamins, antioxidants, and fiber fortification in their marketing practices. For example, the webpage for Splenda Essentials promotes the products' health benefits by stating "Make everything you sweeten a little bit better for you with Splenda Essentials Sweetener Products! It's the same great taste you love, plus a small boost of healthy nutrients – B vitamins, antioxidants or fiber."[8]

16.     The product itself is called "Essentials," which misrepresents that that these varieties provide additional nutrients that consumers *need* in order to be healthy.

17.     Defendants price the Splenda Essentials line 25% higher than regular Splenda, causing consumers to pay a premium for this product. Defendants sell Splenda Essentials direct to consumers at their online store, the Splenda Store. Defendants sell the Splenda Essentials product line for $4.29 per box. However, regular Splenda contains 100 packets, and Splenda Essentials contains only 80 packets.[9]

//

---

[8] Splenda Essentials Home Page, www.splenda.com/essentials (last visited July 21, 2012).
[9] Splenda Sweetener Store Webpage, www.splendastore.com/category/getsplenda/packets.do?nType=2 (last visited July 21, 2012), *and* www.splendastore.com/category/splenda-+essentials-.do?nType=1 (last visited July 21, 2012).

**Splenda Essentials with B vitamins**

 

18.     The Splenda Essentials with B vitamins label claims that the product "helps support a healthy metabolism" by offering a blend of B1 (thiamin), B5 (pantothenic acid), and B6 (pyridoxine) vitamins. This statement ties the product's unique selling proposition to metabolizing fat and carbohydrates,[10] thus leading the consumer to equate a "healthy metabolism" with weight loss. This is deceptive because the three B vitamins present in the product will not have any impact on weight loss.[11]

19.     The Splenda Essentials with B vitamins website is deceptive because it describes how all three B vitamins together support the metabolism of fats, carbohydrates, and proteins.[12] A video on the website advances this deceptive claim by promoting the B

---

[10] Splenda Essentials Frequently Asked Questions Webpage, www.splenda.com/faq/essentials#11 (last visited July 21, 2012).

[11] National Institutes of Health, U.S. National Library of Medicine, Medline Plus, Health Topics, B Vitamins, www.nlm.nih.gov/medlineplus/bvitamins.html (last visited July 21, 2012).

[12] Splenda Essentials Frequently Asked Question Webpage, www.splenda.com/faq/essentials#11 (last visited July 21, 2012).

vitamins variety for weight management.[13] The website stresses the "boost" consumers will receive from Splenda Essentials with B vitamins, implying that the vitamins will cause the body to burn additional calories.[14]

20.     The marketing of Splenda Essentials with B vitamins is deceptive because the amounts and types of vitamins contained in the product do not provide any notable health benefits. A reasonable consumer's expectation is that a "healthy metabolism" will help them lose weight by metabolizing fat and carbohydrates. No reliable studies show that B vitamin supplementation promotes weight loss or weight management in any amount, including the amount in Splenda Essentials.[15]  Furthermore, most Americans are not suffering from deficiencies of these B vitamins.[16]

---

[13] See, e.g., Splenda Essentials Video Web Page featuring "Strategic Eating," www.splenda.com/videos (last visited July 21, 2012).

[14] Splenda Essentials Home Page, www.splenda.com/faq/essentials#11 (last visited July 21, 2012).

[15] National Institutes of Health, U.S. National Library of Medicine, Medline Plus, Health Topics, B Vitamins, www.nlm.nih.gov/medlineplus/bvitamins.html (last visited July 21, 2012).

[16] Institute of Medicine, *DRI for the Thiamin, Riboflavin, Niacin, vitamin B6, Folate, vitamin B12, Pantothenic Acid, Biotin, and Choline*, at 58, 150, and 357 (1998) *available at* http://www.nap.edu/openbook.php?isbn=0309065542; National Institutes of Health, Office of Dietary Supplements, *Dietary Supplement Fact Sheet: Vitamin B6*, (stating that B6 deficiencies are rare, that "some" individuals might have marginal deficiencies, but these are most likely alcoholics and those suffering from kidney disease or autoimmune disorders. Also, "[i]solated vitamin B6 deficiency is uncommon; inadequate vitamin B6 deficiency is usually associated with low concentrations of other B-complex vitamins, such as B12 and folic acid."), ods.od.nih.gov/factsheets/VitaminB6-HealthProfessional/(last visited July 21, 2012); Peter R. Martin et al., National Institutes of Health, National Institute on Alcohol Abuse and Alcoholism, *The Role of Thiamine Deficiency in Alcoholic Brain Disease* (2004) (stating that thiamine-rich foods include meat and poultry, whole grain cereals, nuts, dried beans, peas, and soybeans. "…[M]any foods in the United States commonly are fortified with thiamine, including breads and cereals.") *available at* pubs.niaaa.nih.gov/publications/arh27-2/134-142.htm; University of Maryland Medical Center, *Vitamin B5*

21.     A consumer perception survey further supports that Defendants' marketing of the product's purported health benefits is deceptive. After viewing a print advertisement for Splenda Essentials with B vitamins, 39% of respondents believed the product would help protect the body in some way, while 42% believed that the product would help them lose weight or speed up their metabolism. When consumers view the product on-shelf, as opposed to as part of an advertisement, the metabolism message may be visually more apparent, thus increasing the connection to weight loss.

**Splenda Essentials with Antioxidants**



22.     Splenda Essentials with Antioxidants is deceptive because Defendants represent the product as providing benefits that consumers associate with antioxidant intake, whereas in truth including these antioxidants do not provide any notable health benefits.[17]

---

*(Pantothenic Acid)* (2011) (stating that it is rare for anyone to be deficient in vitamin B5 because it is available in a wide variety of foods), www.umm.edu/altmed/articles/vitamin-b5-000336.htm (last visited Aug. 2, 2012).

[17] Rui Hai Liu, *Health Benefits of Fruits and Vegetables are from Additive and Synergistic Combinations of Phytochemicals*, 78 Am. J. Clin. Nutr. 517S, 517S-520S, at 518S (2003) (finding that less than 1% of the total antioxidant activity of apples comes from ascorbic acid (vitamin C); the vast majority of antioxidant activity is related to phytochemicals in the whole fruit).

23.     The packaging, as well as the Splenda Essentials website, claims that this product contains "20% of the daily value of antioxidant vitamins C and E, like those found in fruits and vegetables."[18] In fact, fruits and vegetables are not a good source of vitamin E. This language, coupled with packaging labels that depict antioxidant-rich fruits, like strawberries, raspberries, blueberries, and blackberries, gives consumers the impression that the product's antioxidant content is derived from real fruit or provides the same benefits as real fruit. However, Defendants base their antioxidant claim not on real fruit, but on fortification with synthetic dl-alpha-tocopheryl acetate and ascorbic acid. Dl-alpha-tocopheryl acetate is a synthetic, or chemically synthesized, type of vitamin E,[19] and has only one-half of the biological activity of natural d-alpha-tocopherol[20] – the type of vitamin E found in whole foods. Finally, even though the Splenda Essentials packets *do* provide 20% of the Daily Value of vitamins C and E,[21] large-scale clinical trials have failed to find that antioxidant vitamins lower the risk of cardiovascular disease, cancer, or cognitive decline.[22]

---

[18] Splenda Essentials with Antioxidants back panel, Splenda Essentials Website, www.splenda.com/products/antioxidants-packets (last visited July 21, 2012).

[19] 21 C.F.R 184.1890.

**[20]** Institute of Medicine, Food and Nutrition Board, *Dietary Reference Intakes for Vitamin C, Vitamin E, Selenium, and Carotenoids A Report of the Panel on Dietary Antioxidants and Related Compounds, Subcommittees on Upper Reference Levels of Nutrients and Interpretation and Uses of Dietary Reference Intakes, and the Standing Committee on the Scientific Evaluation of Dietary Reference Intakes* 191 (National Academy Press, 2000).

[21] 21 C.F.R. 101.99(c)(8)(iv). The Reference Daily Intake ("RDI") of vitamin C is 60 milligrams.  The RDI of vitamin E is 30 International Units ("IU"). Per packet, there are 12 milligrams of vitamin C, and 6 IU of vitamin E.

[22] *See e.g.,* H.D. Sesso et al., *Vitamins E and C in the Prevention of Cardiovascular Disease Men: The Physicians' Health Study II Randomized Trial* 300(18) JAMA 2123 (Nov. 12, 2008); J.M. Gaziano et al., *Vitamins E and C in the Prevention of Prostate and Total Cancer in Men: The Physicians' Health Study II Randomized Controlled Trial* 301(1) JAMA 52 (Jan. 7, 2009); Jae Hee

FIRST AMENDED CLASS ACTION COMPLAINT

24.     The purported benefits that are often attributed to antioxidants are based on studies involving the consumption of whole fruits and vegetables, not the consumption of synthetic antioxidant vitamins. The Splenda Essentials labels and website deceptively overstate the product's health benefits because vitamins C and E account for only a fraction of the antioxidant activity or other beneficial compounds provided by whole fruits and vegetables. Although clinical trials have not tested the impact of fruits and vegetables on the risk of cardiovascular disease, cancer, or cognitive decline, few experts would conclude that the vitamins C and E in Splenda Essentials with Antioxidants have the same health benefits as diets rich in fruits and vegetables.[23]

25.     Defendants' Splenda Essentials with Antioxidants labels and other marketing materials give the impression that the product provides health benefits.  The consumer perception study revealed that 68% of respondents believed that Splenda Essentials with Antioxidants provides the same health benefits as antioxidants found in fruits and vegetables, and 42% of respondents believed one of more of the following attribute statements related to the product:  1) it may prevent disease, 2) it supports the body's anti-

Kang et al.,  *Vitamin E, Vitamin C, Beta Carotene, and Cognitive Function Among Women with or at Risk of Cardiovascular Disease: The Women's Antioxidant and Cardiovascular Study* 119(21) CIRCULATION 2772 (June 2, 2009); J. Lin et al., *Vitamins C and E and Beta Carotene Supplementation and Cancer Risk: A Randomized Controlled Trial* 101(1) J. NAT'L CANCER INST. 14 (Jan. 7, 2009); I.M. Lee et al., *Vitamin E in the Primary Prevention of Cardiovascular Disease and Cancer: The Women's Health Study: A Randomized Controlled Trial* 294(1) JAMA 56 (July 6, 2005).

[23] *See e.g.*, H. Boeing et al., *Critical Review: Vegetables and Fruit in the Prevention of Chronic Diseases* EUR. J. NUTR. (June 9, 2012); F.J. He et al., *Fruit and Vegetable Consumption and Stroke: Meta-Analysis of Cohort Studies* 367 LANCET 320 (2006); F.J. He et al., *Increased Consumption of Fruit and Vegetables is Related to a Reduced Risk of Coronary Heart Disease: Meta-Analysis of Cohort Studies* 21 J. HUMAN HYPERTENSION 717 (2007).

FIRST AMENDED CLASS ACTION COMPLAINT

bacterial capabilities, 3) it may prevent colds, or 4) it may prevent cancer. This response

suggests that the product's antioxidant label message and fruit depictions deceive

consumers about the product's health benefits.

**Splenda Essentials with Fiber**



26.     Defendants deceptively represent that Splenda Essentials with Fiber provides

the health benefits a reasonable consumer expects from fiber, while research is inconclusive

about the physiological benefits of refined, processed fiber.[24] In addition, the Defendants do

not differentiate between the health benefits of whole, intact fibers found in whole grains,

vegetables, fruits, and legumes, versus refined fibers, or those added to foods in purified

powder forms.  Defendants' product contains a refined form of fiber – soluble corn fiber.

27.     Defendants' product label features foods rich in intact fiber, such as

strawberries, apples with their skin intact, and cereal with dark (presumably whole) grains.

These images, coupled with the statements on the label, "1 gram of fiber" and "healthy

fiber," give consumers the impression that they are receiving the same health benefits as

---

[24] Institute of Medicine, *DRI for the Thiamin, Riboflavin, Niacin, vitamin B6, Folate, vitamin B12, Pantothenic Acid, Biotin, and Choline*, at 58, 150, and 357 (1998) *available at* www.nap.edu/ openbook.php?isbn=0309065542.

they would from fibers found in whole foods. Furthermore, the Defendants' website provides a lengthy description of the health benefits of fiber, along with statements like, "small boost of healthy fiber" and "[an] easy way to bump up your fiber intake."[25] Defendants' website further suggests that most adults are deficient (by over 50%) in their daily fiber intake, wrongly implying that Defendants' product is a suitable, if not necessary, means of consuming all of the fiber they require. These cues deceive consumers into believing that the health benefits associated with intact fiber also pertain to the refined fiber found in Splenda Essentials with Fiber.

28.      Since there is no scientific consensus that refined fibers function like intact fibers,[26] Defendants' marketing practices deceptively give consumers the impression that added fiber acts in the same capacity as fibers from whole foods.[27] For example, the consumer perception survey that had respondents review the front panel packaging of Splenda Essentials with Fiber showed that 38% thought the product would help them lose weight, while 58% thought it would keep them regular, and 23% thought it would make them feel fuller. Evidence indicates that processed fibers do not have a consistent effect on satiety. In one recent study, a 10 gram dose of soluble corn fiber had no impact on satiety,

---

[25] Splenda Essentials with Fiber Webpage, www.splenda.com/essentials (last visited July 21, 2012).

[26] Institute of Medicine, *DRI for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids*, at 339 (2005) (stating that intact and refined "[f]ibers have different properties that result in different physiological effects.").

[27] Splenda Essentials Health & Wellness – Fiber Web Page, www.splenda.com/health-wellness/fiber (last visited July 21, 2012).

FIRST AMENDED CLASS ACTION COMPLAINT

-14-

1    hunger, or food intake.[28] This study shows that consumers are deceived by the

2    representations Defendants are making regarding Splenda Essentials with Fiber.

3    **CLASS ACTION ALLEGATIONS**

4           29.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal

5    Rules of Civil Procedure. The class that Plaintiffs seek to represent is composed of and

6    defined as follows:

7
8
9
> **All California residents who purchased Splenda Essentials at any time four year prior to the filing date of this Complaint ("Class Period"). Excluded from the Class are Defendants' officers and directors and the immediate families of the Defendants' officers and directors.  Also excluded from the Class are the Defendants' legal representatives, heirs, successors or assigns, and any entity in which Defendants have or have had a controlling interest.**

10           30.    For purposes of the Complaint, the phrase "Class Members" refers collectively

11    to all members of this Class, including the named Plaintiffs.

12           31.    This action has been brought and may properly be maintained as a class action

13    against Defendants pursuant to the provisions of Federal Rule of Civil Procedure 23 because

14    there is a well-defined community of interest in the litigation and the proposed Class is

15    easily ascertainable.

16           32.    Numerosity: Plaintiffs do not know the exact size of the Class, but given the

17    nature of the claims and Defendants' sales of Splenda Essentials nationally, Plaintiffs

---

[28] Melinda Karalus et al., *Fermentable Fibers do not Affect Satiety of Food Intake by Women Who do not Practice Restrained Easting*, J. ACAD. NUTR. DIET, July 5, 2012, https://mail-attachment.googleusercontent.com/attachment/u/1/?ui=2&ik=98ef475b53&view=att&th=138e787c3c107d5e&attid=0.2&disp=inline&safe=1&zw&saduie=AG9B_P97yCzVx7lZuRUdGc_ahG_C&sadet=1343925782059&sads=MjKWYa1xxOo1TAXADhWjvHaUzhU&sadssc=1 (last visited Aug. 2, 2012).

1    believe that Class Members are so numerous that joinder of all members of the Class is

2    impracticable.

3           33.     Common Questions Predominate: This action involves common questions of

4    law and fact to the potential Class because each Class Member's claim derives from the

5    same allegedly deceptive action. The common questions of law and fact involved

6    predominate over questions that affect only Plaintiffs or individual Class Members. Thus,

7    proof of a common or single set of facts will establish the right of each member of the Class

8    to recover. Among the questions of law and fact common to the Class are:

- Whether Defendants marketed and sold Splenda Essentials to Plaintiffs, and those similarly situated, using deceptive statements or representations;

- Whether Defendants omitted or misrepresented material facts in connection with marketing and sale of Splenda Essentials;

- Whether Defendants engaged in common course of conduct complained of herein;

- Whether Defendants' marketing and sales of Splenda Essentials constitutes a deceptive practice; and

- Whether, and to what extent, injunctive relief should be imposed on Defendants to prevent such conduct in the future.

16          34.     Typicality: Plaintiffs' claims are typical of the Class because they bought all of

17   the Splenda Essentials varieties during the Class Period. Defendants' allegedly deceptive

18   actions concern the same business practices described herein, irrespective of where they

19   occurred or were received. Thus, Plaintiffs and Class Members sustained the same injuries

20   and damages arising out of Defendants' conduct in violation of California law. The injuries

21   and damages of each Class Member were caused directly by Defendants' wrongful conduct

22   in violation of law as alleged herein.

FIRST AMENDED CLASS ACTION COMPLAINT

35.     Adequacy: Plaintiffs will fairly and adequately protect the interests of all Class Members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation they are due for the illegal conduct of which they complain. Plaintiffs also have no interests that conflict with or are antagonistic to the interests of Class Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class. No conflict of interest exists between Plaintiffs and Class Members because all questions of law and fact regarding liability of Defendants are common to Class Members and predominate over the individual issues that may exist, such that by prevailing on their own claim, Plaintiffs necessarily will establish Defendants' liability to all Class Members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties seeking the maximum possible recovery for the Class Members.

36.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class Members' rights and disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered

1  by each individual member of the Class may be relatively small, the expenses and the

2  burden of individual litigation would make it difficult or impossible for individual

3  members of the Class to redress the wrongs done to them, while an important public

4  interest will be served by addressing the matter as a class action.

5       37.    The prerequisites to maintaining a class action for injunctive or equitable relief

6  pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on

7  grounds generally applicable to the Class, thereby making appropriate final injunctive or

8  equitable relief with respect to the Class as a whole.

9       38.    Plaintiffs are unaware of any difficulties that are likely to be encountered in

10  the management of this action that would preclude its maintenance as a class action.

11  **FIRST CAUSE OF ACTION**

12  **(Business and Professions Code § 17200, *et seq.* –
Unlawful Business Acts and Practices)**

13       39.    The acts of Defendants described above constitute unlawful business acts and

14  practices.

15       40.    In this regard, Defendants' manufacturing, marketing, distributing, and

16  selling of Splenda Essentials violates California's Sherman Food, Drug, and Cosmetics Law,

17  Cal. Health & Saf. Code, §109875, *et seq.* ("Sherman Law").

18       41.    The relevant part of the Sherman Act declares that food is misbranded if its

19  labeling is false or misleading in any particular way and further provides that it is unlawful

20  for any person to misbrand any food.  Cal. Health & Saf. Code, §§ 110660, 110765.

21       42.    The Sherman Law defines a "person" as "any individual, firm, partnership,

22  trust, corporation, limited liability company, company, estate, public or private institution,

association, organization, group, city, county, city and county, political subdivision of this state, or other governmental agency within the state and any representative, agent, or agency of any of the foregoing."  Cal. Health & Saf. Code, §§ 109995.  Each Defendant is a corporation and, therefore, a "person" within the meaning of the Sherman Act.

43.     The business practices alleged above are unlawful under the Consumers Legal Remedy Act, Cal. Civ. Code §1750, *et seq.* ("CLRA"), which forbids deceptive advertising.

44.     The business practices alleged above are unlawful under §17200, *et seq.* by virtue of violating § 17500, *et seq.*, which forbids untrue advertising and misleading advertising.

45.     As a result of the business practices described above, Business and Professions Code §17203 entitles Plaintiffs and Class Members, to an order enjoining such future conduct on the part of Defendants and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for Splenda Essentials as a result of the wrongful conduct of Defendants.

46.     The above-described unlawful business acts and practices of Defendants, and each of them, present a threat and reasonable likelihood of deception to Plaintiff and members of the Class in that Defendants have systematically perpetrated and continued to perpetrate such acts or practices on members of the Class by means of their deceptive manufacturing, marketing, distributing, and selling of Splenda Essentials.

47.     THEREFORE, Plaintiffs ask for relief as set forth below.

//

//

FIRST AMENDED CLASS ACTION COMPLAINT

-19-

## SECOND CAUSE OF ACTION
### (Business and Professions Code §17200, *et seq.* – Unfair Business Acts and Practices)

48.     Such acts of Defendants, as described above, and each of them, constitute unfair business acts and practices.

49.     Plaintiffs, and other members of the Class who purchased Defendants' Splenda Essentials varieties, suffered a substantial injury of buying a product that they would not have purchased absent Defendants' unfair marketing or by paying an excessive premium price for the unfairly marketed Splenda Essentials varieties.

50.     There is no benefit to consumers or competition by deceptively marketing fortified, artificial sweeteners, like Splenda Essentials.  Indeed, the harm to consumers and competition is substantial.

51.     Plaintiffs and other member of the Class who purchased Defendants' Splenda Essentials had no way of knowing that the product they bought was not actually as marketed. Thus, they could not have reasonably avoided the injury each of them suffered.

52.     The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and other members of the Class.

53.     As a result of the business acts and practices described above, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of Defendants, and such other orders and

1  judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore

2  to any person in interest any money paid for Splenda Essentials as a result of the wrongful

3  conduct of Defendants.

4    54.  THEREFORE, Plaintiffs ask for relief as set forth below.

5  **THIRD CAUSE OF ACTION**
**(Business and Professions Code § 17200, *et seq.* –**
6  **Fraudulent Business Acts and Practices)**

7    55.  Such acts of Defendants as described above, and each of them, constitute

8  fraudulent business practices under California Business and Professions Code § 17200, *et*

9  *seq.*

10    56.  As more fully described above, Defendants' deceptive marketing of Splenda

11  Essentials is likely to deceive reasonable California consumers.  Indeed, Plaintiffs and other

12  members of the Class were unquestionably deceived regarding the characteristics of

13  Defendants' Splenda Essentials, as Defendants' marketing of the product omits the true

14  contents of Splenda Essentials.  Said acts are deceptive business acts and practices.

15    57.  This deception caused Plaintiffs and members of the Class to purchase

16  Splenda Essentials, or pay more than they would have for Splenda Essentials, had they

17  known and understood the true nature and quality of Defendants' products.

18    58.  As a result of the business acts and practices described above, Plaintiffs and

19  the Class, pursuant to Business and Professions Code § 17203 are entitled to an order

20  enjoining such future conduct on the part of Defendants, and such other orders and

21  judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore

22

1    to any person in interest any money paid for Splenda Essentials as a result of the wrongful

2    conduct of Defendants.

3         59.    THEREFORE, Plaintiffs ask for relief as set forth below.

4                         **FOURTH CAUSE OF ACTION**
                 **(Business and Professions Code § 17500, *et seq.* –**
5                    **Misleading and Deceptive Advertising)**

6         60.    Such acts of Defendants as described above, and each of them, constitute

7    misleading and deceptive advertising under California Business and Professions Code §

8    17500, *et seq.*

9         61.    At all material times, Defendants engaged in a scheme of offering their

10   Splenda Essentials varieties for sale to Plaintiffs and other members of the Class by way of,

11   *inter alia*, commercial marketing. These marketing materials misrepresented or omitted the

12   true contents of Splenda Essentials.  Said advertisements and inducements were made

13   within the State of California and come within the definition of advertising as contained in

14   Business and Professions Code § 17500, *et seq.* in that such marketing materials were

15   intended as inducements to purchase Splenda Essentials and are statements disseminated

16   by Defendants to Plaintiffs and the Class and were intended to reach members of the Class.

17   Defendants knew, or in the exercise of reasonable care should have known, that these

18   statements were deceptive.

19        62.    In furtherance of said plan and scheme, Defendants have prepared and

20   distributed within the State of California via commercial marketing, statements that

21   deceptively represent the ingredients contained in Splenda Essentials.  Consumers,

22   including Plaintiffs, necessarily and reasonably relied on these materials concerning

Splenda Essentials. Consumers, including Plaintiffs and the Class, were among the intended targets of such representations.

63.   The above acts of Defendants, in disseminating said deceptive statements throughout the State of California to consumers, including Plaintiffs and members of the Class, were and are likely to deceive reasonable consumers, including Plaintiffs and other members of the Class, by obfuscating the true ingredients of Splenda Essentials, all in violation of the "misleading prong" of California Business and Professionals Code §17500.

64.   As a result of the above violations of the "misleading prong" of the Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiffs and the other members of the Class.  Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of the Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for Splenda Essentials as a result of the wrongful conduct of Defendants.

65.   THEREFORE, Plaintiffs ask for relief as set forth below.

### FIFTH CAUSE OF ACTION
**(Business and Professions Code § 17500, *et seq*. – Untrue Advertising)**

66.   Such acts of Defendants as described above, and each of them, constitute untrue advertising under California Business and Professions Code  § 17500, *et seq.*

67.   At all times, Defendants have engaged in a scheme of offering Splenda Essentials for sale to Plaintiffs and other members of the Class by way of, *inter alia*,

1   commercial marketing and advertising materials. These materials misrepresented the true

2   nature and quality of Splenda Essentials.  Said advertisements and inducements were made

3   within the State of California and come within the definition of advertising as contained in

4   Business and Professions Code  §17500, *et seq.* in that such promotional materials were

5   intended as inducements to purchase Splenda Essentials and are statements disseminated

6   by Defendants to Plaintiffs and the Class and were intended to reach members of the Class.

7   Defendants knew, or in the exercise of reasonable care should have known, that these

8   statements were untrue.

9        68.    In furtherance of said plan and scheme, Defendants have prepared and

10   distributed within the State of California via commercial marketing, that deceptively tout

11   the nature and quality of Splenda Essentials. Consumers, including Plaintiffs and Class

12   members, are among the intended targets of such representations and would reasonably be

13   deceived by such materials.

14        69.    The above acts of Defendants in disseminating said untrue advertising

15   throughout the State of California deceived Plaintiffs and other members of the Class by

16   obfuscating the nature and quality of Splenda Essentials, all in violation of the "untrue

17   prong" of California Business and Professions Code  §17500.

18        70.    As a result of the above violations of the "untrue prong" of the Business and

19   Professions Code  §17500, *et seq.*, Defendants have been unjustly enriched at the expense of

20   Plaintiffs and the other members of the Class. Plaintiffs and the Class, pursuant to Business

21   and Professions Code §17535, are entitled to an order of this Court enjoining such future

22   conduct on the part of Defendants, and such other orders and judgments which may be

necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for Splenda Essentials as a result of the wrongful conduct of Defendants.

71.     THEREFORE, Plaintiffs ask for relief as set forth below.

## SIXTH CAUSE OF ACTION
### (Consumer Legal Remedies Act – Cal. Civ. Code §1750, *et seq.*)

72.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code  § 1750, *et seq.* ("CLRA").

73.     Defendants' actions, representations, and conduct, as described above, and each of them, have violated and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of lease of goods or services to consumers.

74.     Plaintiffs and other Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code  §1761(d).

75.     The Splenda Essentials varieties that Plaintiffs and other members of the Class purchased from Defendants were "goods" within the meaning of Cal. Civ. Code §1761(a).

76.     By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendants have violated, and continue to violate, §1770(a)(7) of the CLRA. Specifically, in violation of Cal. Civ. Code §1770(a)(7), Defendants' acts and practices constitute deceptive methods of competition, in that they misrepresent the particular standard, quality, or grade of the goods.

77.     By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendants have violated, and continue to violate, §1770(a)(16) of the

CLRA. Specifically, in violation of Cal. Civ. Code §1770(a)(16), Defendants' acts and practices constitute deceptive methods of competition, in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

78.     Pursuant to Cal. Civ. Code §1782, Plaintiffs demanded that Defendants correct the problems caused by these unfair and deceptive acts in letters dated August 23, 2012. Notwithstanding this demand, Defendants have failed to correct the problems for Plaintiffs or the class.

79.     Defendants continue to engage in the actions, misrepresentations, and misconduct set forth in this Complaint, specifically violating Cal. Civ. Code §1770(a)(7) and (16). Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein to Cal. Civ. Code §1780(a)(2). If Defendants are not restrained from engaging in these types of practices on the future, Plaintiffs and other members of the Class will continue to suffer harm.

80.     Furthermore, as a result of Defendants' violations of the CLRA, Plaintiffs have been damaged in at least the following ways, in amounts to be proven at trial:

     a.   They purchased and paid a premium for Splenda Essentials that did not conform to what was promised in Defendants' marketing, packaging and labeling; and

     b.   They were deprived of the benefit of their bargain and spent money on Splenda Essentials, when it had less value than warranted.

81.     THEREFORE, Plaintiffs ask for relief as set forth below.

//
//

### SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

82.     As a result of Defendants' deceptive marketing and sale of Splenda Essentials, as described above, Defendants were enriched, at the expense of Plaintiffs and those similarly situated, through the payment of the purchase price for Splenda Essentials.

83.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that it received from Plaintiffs and those similarly situated, in light of the fact that the Splenda Essentials purchased by the Plaintiffs, and those similarly situated was not what Defendants purported it to be. Thus, it would be unjust or inequitable for Defendants to retain the benefit without restitution to Plaintiffs, and those similarly situated, for monies paid to Defendants for Splenda Essentials.

84.     THEREFORE, Plaintiffs ask for relief as set forth below.

### EIGHTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

85.     Plaintiffs and other Class members purchased Defendants' Splenda Essentials, which were marketed as healthful and having particular healthful characteristics as set forth above.  Pursuant to these sales, Defendants impliedly warranted that its fortified sweeteners would be merchantable and fit for the ordinary purposes for which such goods are used and conform to the promises or affirmations of fact made in Splenda Essentials' marketing, packaging, and labeling.  As a result, Plaintiffs and Class members relied on Defendants' representations that its fortified sweeteners were healthful and had particular healthful characteristic as set forth above.  By Defendants' representations regarding the reputable nature of their companies and related entities, and by their marketing, packaging, and

FIRST AMENDED CLASS ACTION COMPLAINT
-27-

labeling of Splenda Essentials, Defendants warranted that Splenda Essentials are healthful and have particular healthful characteristics as set forth above.  Plaintiffs and Class members bought Defendants' Splenda Essentials varieties, relying on representations that the products were healthful and have particular healthful characteristics when, in fact, they are not healthful in that they did not contain the represented health benefits described in Defendants' marketing materials. These representations do not conform to the Defendants' warranties.

86.     Defendants breached the warranty implied at the time of the sale in that Plaintiffs and Class members did not receive goods that were healthful or had healthful characteristics represented and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as marketed.

87.     As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid a premium for Splenda Essentials that did not conform to what was promised in Defendants' marketing, packaging and labeling.  In addition, Plaintiffs and Class members were deprived of the benefit of their bargain and spent money on Splenda Essentials, when it had less value than warranted. Plaintiffs and Class members would not have purchased Splenda Essentials, or would not have purchased Splenda Essentials at a premium, had they known the true facts about the product.

88.     THEREFORE, Plaintiffs ask for relief as set forth below.

### PRAYER FOR RELIEF

THEREFORE, Plaintiffs ask the Court to enter the following judgment:

FIRST AMENDED CLASS ACTION COMPLAINT

-28-

1.   Approving of the Class, certifying Plaintiffs as representatives of the Class, and designating their counsel as counsel for the Class;

2.   Declaring that Defendants have committed the violations alleged herein;

3.   Granting restitution and disgorgement, pursuant to the California Business & Professions Code §§ 17200, et seq. and 17500, et seq.;

4.   Granting declaratory and injunctive relief, pursuant to the California Business and Professions Code §§ 17200, et seq. and 17500, et seq.;

5.   Granting declaratory and injunctive relief and awarding damages pursuant to California Civil Code § 1780;

6.   Granting compensatory damages, the amount of which is to be determined at trial;

7.   Granting punitive damages;

8.   Granting interest at the legal rate on the forgoing sums;

9.   Granting costs of suit incurred; and

10.  Granting further relief as this Court may deem proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated:  September 6, 2012

**THE MILLS LAW FIRM**

*/s/ Robert W. Mills*
Robert W. Mills
Joshua D. Boxer
Corey B. Bennett
880 Las Gallinas Avenue, Suite 2
San Raphael, California 94903
Telephone: (415) 455-1326
Facsimile: (415) 455-1327

FIRST AMENDED CLASS ACTION COMPLAINT
-29-

- and -

**CENTER FOR SCIENCE IN THE PUBLIC INTEREST**
Stephen Gardner
Amanda Howell
5646 Milton Street, Suite 211
Dallas, Texas 75206
Telephone: (214) 827-2774
Facsimile: (214) 827-2787

*Attorneys for Plaintiffs Michael Fishman, Alvin Kupperman, and Barbara Bronson and the Proposed Class*