IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA BRONSON, MICHAEL FISHMAN, AND ALVIN KUPPERMAN,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON, INC. AND MCNEIL NUTRITIONALS, INC.,<br><br>Defendants. | No. C 12-04184 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. MTD (dkt. 32). The First Amended Complaint ("FAC") alleges that Defendants' product labels and marketing campaign were deceptive and misleading, in violation of California law. See dkt. 16. The Court GRANTS in part and DENIES in part the Motion to Dismiss.

**I.   BACKGROUND**

The Court takes its account of the facts from the allegations in Plaintiffs' FAC. Plaintiffs Barbara Bronson, Michael Fishman, and Alvin Kupperman, on behalf of themselves and others similarly situated, filed this class action suit against Defendants Johnson & Johnson, Inc. and McNeil Nutritionals, LLC, on August 9, 2012. See Compl. (dkt. 1). They subsequently filed the FAC on September 6, 2012. The FAC centers on three of Defendants' products: Splenda Essentials with Antioxidants, Splenda Essentials with

1  Fiber, and Splenda Essentials with B Vitamins. Id. Plaintiffs allege that the product labeling
2  and marketing campaign contains deceptive and misleading information. Id.
3       Plaintiffs challenge the marketing as misleading when viewed in its entirety.
4  Specifically, they take issue with the: (1) product name Splenda "Essentials"; (2) label on
5  Splenda with Fiber, which includes the statement "1 gram of fiber in each packet" and
6  "healthy fiber" placed next to a photo of fruit and whole-grain cereal; (3) label on Splenda
7  with Antioxidants, which includes the statement "20% of the daily value of antioxidant
8  vitamins C and E, like those found in fruits and vegetables" placed near a picture of berries;
9  and (4) label on Splenda Essentials with B Vitamins, which includes the statement "helps
10 support a healthy metabolism."[1] Id. Plaintiffs also allege that print and website materials for
11 all three products contributed to the misleading and deceptive marketing. Id.
12      Plaintiffs claim that they purchased Defendants' products because they "relied heavily
13 on the written misrepresentations" and "deceptive health claims" on the labels, FAC ¶¶ 9,
14 10, 11, but they do not allege that they relied on any website or print marketing. See
15 generally FAC. Plaintiffs purchased Splenda Essentials at full price at various grocery stores
16 in California. Id. ¶ 8. Splenda Essentials costs 25% more than regular Splenda. Id. ¶ 17.
17 Plaintiffs say that they would not have purchased Splenda Essentials had they known that

---

[1] Defendants ask that this Court take judicial notice of color copies of the Splenda Essentials product labeling, regular Splenda labeling, various court opinions and briefs, and the Institute of Medicine's *Dietary Reference Intake for Vitamins C and E*. See Request for Judicial Notice (dkt. 33); Request for Judicial Notice (dkt. 38). A court may consider documents attached to the complaint, incorporated by reference in the complaint, or judicially noticed without converting a motion to dismiss to a motion for summary judgment. United States v. Richie, 342 F.3d 903, 907-08 (9th Cir. 2003). This Court GRANTS the request in part.
   The Splenda Essentials product labels are incorporated by reference in the Plaintiffs' FAC. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007); see also McKinnis v. Sunny Delight Beverages Co., No. CV 07-02034, 2007 WL 4766525, at *4 n.1 (C.D. Cal. Sept. 4, 2007) (considering Defendants' color copies of labels when they were better than the black-and-white versions supplied by Plaintiffs). The court opinions and briefs are judicially noticeable public records but cannot be noticed for the facts contained therein. Cactus Corner LLC v. U.S. Dept. of Agriculture, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004); see also Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (taking notice of court opinion but not underlying facts). The Institute of Medicine's report is incorporated by reference because it is relied on in the complaint. See Swartz, 476 F.3d at 763; In re Taser Intern. S'holder Derivative Litig., No. CV-05-123-PHX-SRB, 2006 WL 687033, at *7 (D. Ariz. Mar. 17, 2006). Neither party relies on the regular Splenda labeling, and so this Court need not address it.

2

Defendants' products were mislabeled, id. ¶ 11, and that they were harmed when they paid an excessive premium for Defendants' mislabeled products, see, e.g., id. ¶¶ 17, 49, 57.

Based on the above-alleged practices, Plaintiffs assert the following claims: (1) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. - Unlawful Business Acts and Practices; (2) UCL - Unfair Business Acts and Practices; (3) UCL - Fraudulent Business Acts and Practices; (4) California's False Advertising Laws ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq. - Misleading and Deceptive Advertising; (5) FAL - Untrue Advertising; (6) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (7) Unjust Enrichment; and (8) Breach of Implied Warranty of Merchantability.[2] See generally FAC.

Defendants filed this MTD on October 30, 2012, seeking to dismiss all of the claims in the FAC.

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Dismissal is proper where a cause of action fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rule calls for sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). A complaint should not be dismissed without leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

Under Rule 9(b), the "circumstances constituting fraud" or any other claim that "sounds in fraud" must be stated "with particularity." Fed. R. Civ. P. 9(b); Vess v. Ciba-

---

[2] Defendants discontinued Splenda Essentials with Antioxidants and Splenda Essentials with B Vitamins. See Decl. of Joshua D. Boxer (dkt. 40). While this renders moot Plaintiffs' request for injunctive relief related to those products, it does not affect Plaintiffs' claims for damages.

3

1  Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). To comply with Rule 9(b), a
2  plaintiff must plead with particularity the time and place of the fraud, the statements made
3  and by whom, an explanation of why or how such statements were false or misleading, and
4  the role of each defendant in the alleged fraud. KEMA, Inc. v. Koperwhats, No. C-09-1587
5  MMC, 2010 WL 3464737, at *3 (N.D. Cal. Sept. 1, 2010). In short, the complaint must
6  include the "who, what, when, where, and how." Cooper v. Pickett, 137 F.3d 616, 627
7  (1997) (internal quotations omitted).

**III. DISCUSSION**

9  Defendants move to dismiss the FAC on the grounds that (A) Plaintiffs lack standing
10 under the UCL, the FAL, and the CLRA; (B) Plaintiffs' claims are preempted by Federal law
11 (C) Defendants' labeling practices qualify for "safe harbor" protection; and (D) Plaintiffs fail
12 to state a claim for relief.

**A.  Standing Under the UCL, the FAL, and the CLRA**

14 Plaintiffs have not adequately alleged that they relied on Defendants' website or print
15 ads. In order to have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must plead
16 that they relied on the misleading materials. Delacruz v. Cytosport, Inc., No. C 11-3532
17 CW, 2012 WL 1215243, at *8 (N.D. Cal. Apr. 11, 2012); Kwikset Corp. v. Sup. Ct., 51 Cal.
18 4th 310, 326 (2011); In re Ferrero Litig., 794 F. Supp. 2d 1107, 1111 (S.D. Cal. 2011). A
19 plaintiff is not permitted to support a claim alleging misleading product packaging with
20 statements that he "never read or relied upon" when making his purchase. Dvora v. Gen.
21 Mills, Inc., No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *8 (C.D. Cal. May 16,
22 2011). In this case, Plaintiffs clearly state that they relied on the product packaging, FAC ¶¶
23 9, 10, 11, but never allege they relied on the website or print advertisements beyond one
24 vague reference to "commercial marketing," see FAC ¶ 62. In fact, during the hearing on
25 this motion, Plaintiff's counsel admitted that the named Plaintiffs relied only on the product
26 packaging.

27 Plaintiffs point to In re Tobacco II Cases, 46 Cal. 4th 298, 306 (2009), arguing that
28 they are not required to plead their exposure to the advertising campaign with an "unrealistic

4

1  degree of specificity." Opp'n at 31.  However, that case was predicated on the plaintiffs'
2  exposure to an "extensive and long-term advertising campaign." Id. at 328.  Plaintiffs cannot
3  rely on Tobacco II unless they have alleged an advertising campaign that is similarly
4  extensive and lengthy.  See Mazza v. Am. Honda Motor Co., 666 F.3d 581, 596 (9th Cir.
5  2012); Delacruz v. Cytosport, No. C 11-3532 CW, 2012 WL 1215243, at *8 (N.D. Cal. Apr.
6  11, 2012).  At best, Defendants' marketing campaign began in 2012, which is substantially
7  less than the "long-term" campaign at issue in Tobacco II that lasted at least seven years.
8  FAC ¶ 12; Tobacco II, 46 Cal. 4th at 306.

Thus, Plaintiffs have not alleged that they have standing to challenge Defendants' web and print advertising.  This Court GRANTS the MTD with leave to amend for the allegations concerning those advertisements.

**B.    Preemption**

"Federal preemption can be either express or implied." Chicanos Por la Causa, Inc. v. Napolitano, 544 F.3d 976, 982 (9th Cir. 2008).  The Court's "inquiry into the scope of a statute's pre-emptive effect is guided by the rule that [t]he purpose of Congress is the ultimate touchstone in every pre-emption case." Altria v. Good, 555 U.S. 70, 76 (2008) (internal quotation marks and citations omitted).  Courts begin their analysis "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).  "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States." Id. (internal quotation marks and citation omitted).  Where Congress does provide for express preemption, the presumption against preemption requires courts to read the clause narrowly. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996).

The Federal Food, Drug, and Cosmetic Act ("FDCA") was enacted in 1938 and prohibits the misbranding of food.  The FDA has promulgated regulations pursuant to its authority under the statute.  See, e.g., 21 C.F.R § 101.1, et. seq.  Congress amended the FDCA in 1990 through the passage of the Nutritional Labeling and Education Act

5

("NLEA"). The purpose of the NLEA was to "'clarify and to strengthen [FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'" Nat'l Council for Improved Health v. Shalala, 122 F.3d 878, 880 (11th Cir. 1997) (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337).

The FDCA sets guidelines for when food is "misbranded." See 21 U.S.C. § 343. This includes when food "labeling is false or misleading in any particular." Id. § 343(a)(1). There are also more specific labeling requirements. For example, the FDCA establishes guidelines regarding what nutrition information must be disclosed on food labels, see id. § 343(q), and what voluntary nutrition and health-related claims may be made on food labels, see id. § 343(r). There is no private right of action under the FDCA; instead, the FDA enforces the FDCA and its regulations. See 21 C.F.R. §§ 7.40, 332.

### 1. Express Preemption

The NLEA added an express preemption provision to the FDCA. That provision preempts state laws that address certain subjects covered by the FDCA, including nutritional labeling requirements added by the NLEA. See 21 U.S.C. § 343-1(a).

Section 343-1(a) preempts state requirements for labeling of food that is not identical to §§ 343(q) and (r). Id. § 343-1(a)(4) and (5). "The term 'requirements' reaches beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules." Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (citing Bates v. Down Agrosciences LLC, 544 U.S. 431, 443 (2005)). The FDCA does not preempt Plaintiffs' claims as long as "the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling information of the sort described in section 343(r) and 343(q)." Id. at 1119.

<ins>Splenda Essentials with Antioxidants</ins>

Plaintiffs challenge the labeling on Splenda Essentials with Antioxidants, which states that the product contains "20% of the daily value of antioxidant vitamins C and E, like those found in fruits and vegetables," and includes a photo of berries. FAC ¶ 23.

6

Defendants' statement that Splenda Essentials contains "20% of the daily value of antioxidant vitamins C and E" is an express nutrient content claim. Express nutrient content claims are those that make "any direct statement about the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1). The FDA permits these statements, as long as it does not "in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect . . . ." Id. § 101.13(i)(3).

The FDA promulgated regulations regarding the use of nutrient content claims with respect to antioxidants. Id. § 101.54(g); N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health, 509 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2007) (acknowledging that § 101.54 was promulgated pursuant to 21 U.S.C. § 343(r)). These claims are allowed when: (1) an RDI has been established for each of the nutrients; (2) the nutrients that are the subject of the claim have recognized antioxidant activity . . . ; (3) the level of each nutrient is at least 10% of the RDI for vitamins; and (4) the names of each nutrient are included on the label. Id. Reading additional requirements into § 101.54 would violate the express preemption provision of the FDCA. See Red v. Kraft Foods, Inc., 754 F. Supp. 2d 1137, 1144 (C.D. Cal. 2010).

The label at issue fulfills each of the labeling requirements for antioxidant claims. The parties agree that there are established RDIs for vitamins C and E and that each Splenda Essentials with Antioxidants packet contains twenty percent of the RDI. See MTD at 16; FAC ¶ 23 n.21. Furthermore, the FDA recognized that the vitamins have "recognized antioxidant activity." See Nutrient Content Claims: Definition for "Antioxidant," 62 Fed. Reg. 49868, 49873-74 (Sept. 23, 1997). The names of the vitamins are also appropriately included on the label. See FAC at 10.

The FDA does not require that companies distinguish between synthetically derived antioxidants and those derived from fruit. Thus, Plaintiffs' claim that Defendants' label is misleading because it is lacking this distinction is preempted. See Carrea v. Dreyer's Grand Ice Cream, Inc., 475 F. App'x 113, 115 (9th Cir. 2012) (holding that state law claims were preempted because statement was an express nutrient content claim that the FDA "not only

1  permitted, but further instructs"); Turek v. Gen. Mills, Inc., 662 F.3d 423, 427 (7th Cir.
2  2011) (label stating that product contained "35% of your daily fiber" was a nutrient content
3  claim and expressly preempted by Federal law).

4      Defendants do not argue that Federal law preempts Plaintiffs' claims with regard to
5  the statement "like those found in fruits and vegetables" placed next to a photograph of
6  antioxidant rich foods like strawberries, raspberries, blueberries, and blackberries. See
7  MTD.  Defendant instead focuses on the fact that "the FDA affirmatively prohibits
8  manufacturers from labeling products in any manner that suggests that 'a natural vitamin in a
9  food is superior to an added or synthetic vitamin.'" MTD at 17 (citing 21 CFR
10  § 101.9(k)(9)).

11      Plaintiffs, however, do not argue that the labeling leads a consumer to think that the
12  vitamins contained in fruit are better.  Instead, Plaintiffs allege that the phrase "like those
13  found in fruits and vegetables" placed next to a photo of berries misleadingly suggests that
14  the antioxidants are actually derived from fruits and vegetables, or that they produce the
15  same health benefits as fruits and vegetables. FAC ¶ 23.  Claims based on those portions of
16  the label are not preempted.  See Red v. Kraft Foods, Inc., 754 F. Supp. 2d 1137, 1145 (C.D.
17  Cal. 2010).

18                  Splenda Essentials with Fiber

19      Plaintiffs challenge Defendants' Splenda Essentials with Fiber label, alleging that the
20  label is misleading because Defendants do "not differentiate between the health benefits of
21  whole, intact fibers found in whole grains, vegetables, fruits, and legumes, versus refined
22  fibers." FAC ¶ 26.  To the extent that Plaintiffs' claims challenge Splenda Essentials'
23  statement that each packet contains "1 gram of fiber," their claim is preempted.

24      The FDCA and NLEA specifically address the labeling of fiber on a package.  A food
25  is properly branded if the label contains a claim, "which expressly or by implication
26  characterizes the level of any nutrient which is of the type required by [section 343](q)(1)."
27  21 U.S.C. § 343(r)(1)(A)).  According to section 343(q)(1)(D), the label must state "the
28  amount of . . . dietary fiber . . . contained in each serving or unit of measure."  The FDA only

8

distinguishes between soluble and insoluble fiber, rather than "natural" and "non-natural," or "intact" and "processed fibers." 21 C.F.R. § 101.9(c)(6)(i). In fact, the FDA rejected a proposal to distinguish between fiber "intrinsic and intact in plants" and synthetically manufactured fiber on product labeling. 72 Fed. Reg. 62149, 62166-67 (Nov. 2, 2007).

The Seventh Circuit recently held that claims based on a similar label were preempted. Turek v. General Mills, Inc., 662 F.3d 423 (7th Cir. 2011). That court considered labeling on Fiber Plus bars contending that the bars contained "35% of your daily fiber." Id. at 425. The defendant did not distinguish on the label between naturally-occurring fiber and non-natural fiber. Id. at 425-26. The court determined that federal law preempted the claim because it read additional labeling requirements into federal law. Id. at 427.

Plaintiffs argue that "Defendants do not differentiate between the health benefits of whole, intact fibers found in whole grains . . ., versus refined fibers, or those added to foods in powdered forms." FAC ¶ 26. That is essentially the same argument rejected in Turek. See 662 F.3d at 427. This Court agrees with the reasoning in Turek, and to the extent that Plaintiffs would require that Defendants change the label "1 gram of fiber" to explain that the fiber is synthetically derived, the claim is preempted because Federal regulations do not require any such labeling.[3]

### Splenda Essentials with B Vitamins

Plaintiffs challenge the statement on the Splenda Essentials with B Vitamins label that the product will "help support a healthy metabolism." FAC ¶ 18. Defendants contend that this statement is a "structure/function claim,"[4] which is specifically permitted by FDA regulations and thus preempted by the FDCA. However, preemption for structure/function

---

[3] Plaintiffs also allege that the statement "1 gram of healthy fiber" is misleading in the context of the label as a whole. FAC ¶ 27; Request for Judicial Notice, Ex.B (emphasis added). Defendants' vaguely assert that this claim is preempted by Federal law according to Turek but fail to point to any statute, regulation, or case law that point to Federal law addressing whether fiber may be classified as "healthy." MTD at 13. Thus, this Court does not address preemption regarding labeling the fiber as "healthy."

[4] Structure/function claims are those that "describe the role of the nutrient . . . intended to affect normal structure or function in humans" or "characterize the means by which a nutrient . . . acts to maintain such structure or function." 21 U.S.C. § 101.93(f).

9

claims is limited to dietary supplements, not food labels. As such, Plaintiffs' claims regarding Splenda with B Vitamins are not preempted.

Defendants argue, and Plaintiffs concede, that the label at issue contains a "structure/function"claim. MTD at 18; Opp'n at 17. According to various FDA guidance, federal law permits structure/function claims on food labels. See, e.g., 65 Fed. Reg. 1000-01, 1033 (Jan. 6, 2000) (interpreting 21 U.S.C. § 321(g)(1)(c) as permitting structure/function claims); Claims that Can Be Made for Conventional Foods and Dietary Supplements, Sept. 2003, http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm111447.htm.

In 1994, Congress passed the Dietary Supplement Health and Education Act ("DSHEA"), which clarified the labeling requirements of dietary supplements. Pub. L. No. 103-417, 108 Stat. 4325 (1994). As part of DSHEA, the FDA adopted regulations defining structure/functions claims in relation to dietary supplements. 21 C.F.R. § 101.93. Section 343(r)(6) was also added to the statutory labeling guidelines, therefore preempting any state law that is not identical to the federal structure/function guidelines for dietary supplements through § 343–1(a)(5).

Defendants argue that the goal of DSHEA was to bring dietary supplement labeling in line with conventional food labeling and that § 343–1(a) should be read broadly. MTD at 20. That is, because § 343–1(a) and 343(r)(6) together preempt state law that is not identical to Federal law regarding structure/function for dietary supplements, these same statutes also preempt state laws regarding structure/function claims for food because structure/function claims for food are "claims of the type" that are preempted for dietary supplements. See MTD at 23.

That argument, however, overlooks the plain language of § 343(r)(6), which specifically applies to dietary supplements, not to food. Because this Court is required to construe preemption statutes narrowly, see Medtronic, Inc., 518 U.S. at 485, and Congress has not specifically preempted state laws related to structure/function claims for food, this

1 Court concludes that Plaintiffs' claims regarding Splenda with B Vitamins are not
2 preempted.

### 2. Implied Preemption

Plaintiffs' claims relating to Splenda Essentials with B Vitamins are not impliedly preempted. "Implied preemption occurs where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' or when compliance with both federal and state regulations is physically impossible." Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1034 (N.D. Cal. 2009) (citing Chicanos Por La Causa, Inc., 544 F.3d 976, 982). Conflict preemption may exist even when there is an express preemption provision and the state law at issue is not expressly preempted. Id. (citing Chicanos, 544 F.3d at 985).

Here, Defendants have not shown that Plaintiffs' claims would "upend [the] FDA's carefully calibrated scheme." MTD a 24. The FDA has not created nuanced regulatory guidelines relating to food structure/function statements. Defendants point to "'uniform' and 'objective' rules to guide manufacturers in crafting structure/function claims." MTD at 24. Those rules, however, concern <u>dietary supplement</u> structure/function statements, and not <u>food</u> structure/function statements. See 65 Fed. Reg. at 1008, 1011. In fact, there are very few regulations regarding structure/function statements for food. See, e.g., Ackerman v. Coca-Cola, Co., No. CV-09-0395, 2010 WL 2925955, at *13 n.24 (noting that structure/function food labels are "relatively unregulated").

### C. Safe Harbor Doctrine

Defendants argue that the safe harbor doctrine bars Plaintiffs' UCL, FAL, and CLRA claims. MTD at 24. The safe harbor defense states that "if the legislature has permitted certain conduct or considered a situation and concluded that no action should lie, courts may not override that determination." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 182 (1999). Defendants say that Plaintiffs' claims fail because the labels are permitted under federal law. To the extent that this Court has already determined that claims

11

1  related to statements on the fiber and antioxidants product labels are preempted, the safe
2  harbor defense is moot. See Chacanaca, 752 F. Supp. 2d at 1125 n.8.

3  As for the B vitamins product, Defendants argue that federal law provides a safe
4  harbor because the FDA permits structure/function claims on food labels. 65 Fed. Reg. at
5  1033. Even if the Splenda with B Vitamin label is a permissible structure/function claim,
6  however, Defendants overlook that those same regulations also require that the labels not be
7  "misleading." Id. Because Plaintiffs challenge the labeling of Splenda Essentials with B
8  Vitamins as misleading, even if structure/function claims are permitted by the FDA, the safe
9  harbor defense does not apply.

10     **D.**     **Failure to State a Claim**
11         **1.**     **Lack of Substantiation Theory**

12  Defendants argue that Plaintiffs' claims do not rely on false or misleading labels;
13  rather, according to Defendants, Plaintiffs allege that the labels lack scientific substantiation,
14  and that California law does not recognize such claims. MTD at 30-32.

15  Claims that rest on a lack of substantiation, instead of provable falsehood, are not
16  cognizable under the California consumer protection laws. In re Clorox Consumer Litig.,
17  No. 12–00280 SC, 2012 WL 3642263, at *4 (N.D. Cal. Aug. 24, 2012) (collecting cases);
18  Scheuerman v. Nestle Healthcare Nutrition, Inc., No. 10–3684, 2012 WL 2916827, at *5
19  (D.N.J. July 17, 2012). Challenges based on a lack of substantiation are left to the Attorney
20  General and other prosecuting authorities; private plaintiffs, in contrast, have the burden of
21  proving that advertising is actually false or misleading. Nat'l Council Against Health Fraud
22  v. King Bio Pharm., Inc., 107 Cal. App. 4th 1336, 1344-45 (2003) ("private plaintiffs are not
23  authorized to demand substantiation for advertising claims").

24  Courts look to a plaintiff's complaint as a whole when determining if a plaintiff
25  merely alleged a lack of substantiation claim. See In re Clorox, 2012 WL 3642263, at *4. A
26  claim can survive a lack of substantiation challenge by, for example, alleging studies
27  showing that a defendant's statement is false. See, e.g., id. at *5 (denying Defendant's MTD
28  on a lack of substantiation challenge where Plaintiffs alleged two scientific studies directly

1 contradicting Defendant's advertising). In contrast, a plaintiff's reliance on a lack of
2 scientific evidence or inconclusive, rather than contradictory, evidence is not sufficient to
3 state a claim. See id.; Stanley v. Bayer Healthcare LLC, No. 11cv862–IEG(BLM), 2012 WL
4 1132920, at *6 (S.D. Cal. Apr. 3, 2012) (granting summary judgment motion where
5 plaintiff's claims relied on inconclusive expert testimony and defendant had not substantiated
6 its labeling).

Here, with the B vitamins and fiber products, Plaintiffs allege only that Defendants did not substantiate their labeling. See FAC ¶ 14. They say that "no reliable studies have shown" that Splenda Essentials with B Vitamins promotes weight loss, FAC ¶ 20, that "there is no scientific consensus that refined fibers function like intact fibers", id. ¶ 28, and that "research is inconclusive about the physiological benefits of refined, processed fiber," id. ¶ 26. Plaintiffs fail to cite any source stating that B vitamins do not contribute to weight loss or that the effect of refined fiber is actually different than intact fiber.[5]

Plaintiffs do allege studies demonstrating the falsity of the packaging where such studies exist, see FAC ¶ 22 n.17 (citing study that antioxidants found in an apple are more beneficial than added vitamin C), which further confirms that Plaintiffs' claims lacking such allegations rest on mere lack of substantiation theories. Plaintiffs contend that other vague allegations, such as that the products "possess certain characteristics, uses, or benefits that it does not have," overcome these deficiencies. Opp'n at 30 (citing FAC ¶¶ 1 n.2, 4, 41, 44). However, examining the FAC as a whole, the Court discerns no plausibly pled claims other than the impermissible allegations that Defendants' labeling lacks scientific substantiation.[6]

---

[5] Plaintiffs cite the National Institute of Health's website for their B vitamins claim, but this website does not include any information about the effect of B vitamins on weight loss. See FAC ¶ 18 n.11. Additionally, one source cited for the fiber claim discusses B vitamins, not fiber, id. ¶ 26 n.24, while another source cites an invalid website link, id. ¶ 28 n.28. Moreover, Plaintiffs do not identify what benefits are found in whole, intact fibers and how the soluble corn fiber is different. See id. ¶¶ 26-28.

[6] Plaintiffs cite a Federal Trade Commission ("FTC") order in their FAC, stating that the FTC requires a "higher standard of proof in order to permit Defendants to assert health claims." FAC ¶ 4. However, that order is irrelevant because it was brought by the FTC pursuant to the Federal Trade Commission Act, and not by private citizens pursuant to the California state law at issue in this case. Plaintiffs cite no authority for the proposition that FTC standards for bringing a

13

Plaintiffs' challenges to the fiber and B vitamins labels are distinguishable from the recent Ninth Circuit decisions in Williams and Chavez v. Nestle USA, Inc., No. 11-56066, 2013 WL 857599, at *1 (9th Cir. 2013). In Williams, a package of fruit snacks was called "fruit juice snacks," and the packaging contained pictures of fruit, incorrectly suggesting that the pictured fruit or juices were ingredients in the snacks. 552 F.3d at 939. In Chavez, the labeling on a fruit juice called "Juicy Juice Brain Development" was misleading given the product's name, labeling, and representation, because the juice contained such a small amount of nutrients that a child would need to drink more than a bottle each day for any benefit. 2013 WL 857599, at *1.

Here, Plaintiffs are not arguing that the health benefits of Splenda's B vitamins and fiber products are different from the health benefits of foods with those ingredients. Instead, they argue that there are not any studies to support the conclusion that the benefits are the same. See FAC ¶¶ 14, 18, 20, 26, 28. Those are lack of substantiation claims.

In contrast, Plaintiffs' claims regarding Splenda Essentials with Antioxidants are adequately, if tenuously, pled. First, Plaintiffs allege that the labeling is misleading because it suggests that the antioxidants contained in the product, vitamins C and E, were derived from fruits and vegetables, when they are actually ascorbic acid and synthetically created vitamin E. FAC ¶ 23. Second, Plaintiffs cite at least once source saying that the vast majority of antioxidant benefits from fruit come from the entire fruit, and not just the vitamin C.[7] FAC ¶ 22 n.17. Plaintiffs allege, as in Williams, that the labels are actually misleading as to the source of the vitamins, and also that the label affirmatively misleads consumers into believing that the health benefits from the Splenda product are the same as the health benefits from fruit.

---

lack of substantiation challenge to product advertising apply to a private individual's claims under California law.

[7] Plaintiffs also allege that synthetic vitamin E has "one-half the biological activity" of naturally occurring vitamin E. FAC ¶ 23. Defendants argue that this fact is misleading, as the differences in types of vitamin E are taken into account when calculating Reference Daily Intake ("RDI"). See MTD at 17 n.10. As Plaintiffs adequately allege that Defendants' claims regarding vitamin C are false, the Court need not address this issue.

14

1    Because Plaintiffs rely on a lack of substantiation theory for the claims related to
2    Splenda Essentials with Fiber and Splenda Essentials with B Vitamins, but not for the
3    antioxidant product, this Court GRANTS the MTD with leave to amend for the UCL, the
4    FAL, and the CLRA claims based on the B vitamin and fiber products, but DENIES the
5    MTD for the antioxidant product.

### 2. The "Reasonable Consumer"

Deceptive labeling claims under the UCL, the FAL, and the CLRA are evaluated by whether a "reasonable consumer" would likely be deceived. Williams, 552 F.3d at 938 (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)). The California Supreme Court has recognized "that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Id. (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 450 (2002)) (internal quotations omitted) (emphasis added).

Generally, the question of whether a business practice is deceptive presents a question of fact not suitable for resolution on a motion to dismiss. See id. However, the court may in certain circumstances consider the viability of the alleged consumer law claims based on its review of the product packaging. See Werbel v. Pepsico, Inc., No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010). "Thus, where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." Id. (citing Sugawara v. Pepsico, Inc., No. 208CV01335-MCEJFM, 2009 WL 1439115, at *3-4 (E.D. Cal. May 21, 2009)) (finding that the packaging for Cap'n Crunch cereal and its use [of] the term "Crunch Berries" was not misleading); Videtto v. Kellogg USA, No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086, at *2 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops" cereal contained "real, nutritious fruit"); McKinnis v. Kellogg USA, No. CV 07-2611 ABC (Rcx), 2007 WL 4766060, at *3-4 (C.D. Cal. May 21, 2007) (same).

15

That federal law expressly permits certain food labeling statements used by Defendants "does not necessarily negate Plaintiffs' claims." Red, 754 F. Supp. 2d at 1144. However, it is unclear how much a court may rely on preempted statements when determining the likelihood that a reasonable consumer would be misled by the labeling. See Williams, 552 F.3d at 937 (refusing to address any preemption arguments because the defendant failed to address them at the trial level even though many of the statements were likely preempted by Federal law). Because the Splenda Essentials with Antioxidants label might be misleading to a reasonable consumer regardless of whether the preempted statements are examined, the Court need not resolve the issue.[8]

### Splenda Essentials Name

Plaintiffs contend that addition of the word "essentials" in the name of the products is misleading because it "cues customers to think this product is a necessity" and suggests that the nutrients included are necessary to be healthy. FAC ¶¶ 5, 16.

"Misdescriptions of specific or absolute characteristics of a product are actionable." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 2011) (internal citations omitted). However, "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (quoting Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1005 (9th Cir. 2003)).

Previous cases that examined the use of the word "essential" in marketing have determined that the word is mere puffery when used to describe the nature of a product. See McKinney v. Google, No. 5:10-CV-01177 EJD, 2011 WL 3862120, at *7 (N.D. Cal. Aug. 30, 2011) (claim that smartphone "was essential for web surfing and email" non-actionable puffery); Whiting v. AARP, 701 F. Supp. 2d 21, 30 n.7 (D.D.C. 2010) (statement that health

---

[8] Most cases examine each element of the label separately, first determining which statements are preempted and then examining the rest of the label. See, e.g., Chacanaca, 752 F. Supp. 2d at 1118-24; Lam v. Gen. Mills., Inc., 859 F. Supp. 2d 1097 (N.D. Cal. 2012). Plaintiffs here challenge the label as a whole rather than the individual elements of the label.

16

1 policy provides "essential health benefits" too general and subjective to be a
2 misrepresentation).

3 Here, no reasonable consumer would conclude, based on the presence of the word
4 "essential" in the name "Splenda Essentials," that the Splenda products were essential to
5 their diet or essential in order to receive the vitamins and nutrients in the products. As the
6 title is non-actionable puffery, the Court GRANTS the MTD with respect to the name
7 "Splenda Essentials."

### Splenda Essentials with Antioxidants

Plaintiffs allege that the label on the Antioxidant product, "20% of the daily value of antioxidant vitamins C & E, like those found in fruits and vegetables," when viewed in the context of the photos of berries, creates the misleading impression that the vitamins "are derived from fruit or provide[] the same benefits as real fruit, even though they do not provide any notable health benefits." FAC ¶¶ 22, 23. Because a reasonable consumer might understand the Vitamin C and E to be derived from fruits and vegetables, or to have the same health benefits of fruits and vegetables, this Court DENIES Defendants' motion.

The district court in Henderson v. Gruma Corp., No. CV 10–04173 AHM (AJWx), 2011 WL 1362188, at *1 (C.D. Cal. Apr. 11, 2011) recently addressed a similar issue. In that case, the plaintiffs challenged the labeling on a package of Guacamole dip as potentially misleading. Id. at *12. The label said "GUACAMOLE" twice as large as "FLAVORED DIP," prominently displayed pictures of avocados on the front of the jar, and the dip itself was green. Id. The package also contained the label "With Garden Vegetables." Id. The Henderson court held that a reasonable consumer could understand the product to be real guacamole, rather than a dip containing less than two percent avocado powder. Id. However, the phrase "With Garden Vegetables" was not misleading because the product actually contained vegetables. Id.

Here, Defendants put the phrase "like those found in fruits and vegetables" next to pictures of strawberries, raspberries, blueberries, and blackberries, which are antioxidant rich foods. FAC ¶ 23. A reasonable consumer might think that the antioxidants in Splenda

17

1 Essentials are derived from berries, rather than ascorbic acid and synthetically created
2 vitamins. Id. A consumer might also incorrectly believe that Splenda Essentials has the
3 same health benefits as consuming real fruit. Id. Therefore, this Court DENIES Defendants'
4 Motion to Dismiss for the claims relating to Splenda Essentials with Antioxidants.

### 3. Unjust Enrichment

Defendants move to dismiss Plaintiffs' seventh claim for unjust enrichment because "unjust enrichment is not an independent cause of action in California." MTD at 34 (quoting Smith v. Ford Motor Co., 462 F. App'x 660, 665 (9th Cir. 2011). Plaintiffs fail to oppose this argument.

Though unjust enrichment claims may proceed when based on quasi-contract, see Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008) (Patel, J.), Plaintiffs have not contested Defendants' motion with respect to this claim, and do not specify that their claim is based on quasi-contract. The Court therefore GRANTS the MTD with leave to amend.

### 4. Breach of Implied Warranty of Merchantability

Plaintiffs allege that Defendants breached the implied warranty of merchantability because the products were not fit for their ordinary purpose and did not conform to promises made on the labels. FAC ¶ 85. Defendants contend that the products met a "minimum level of quality." MTD at 33 (internal citations omitted).

California Commercial Code § 2414(1) states that "a warranty that the goods shall be merchantable is implied in a contract for sale." This has multiple meanings, two of which are (1) "the product must '[conform] to the promises or affirmations of fact made on the container or label'"; and (2) the product "must be 'fit for the ordinary purposes for which such goods are used.'" In re Ferrero Litig., 794 F. Supp. 2d at 1118 (quoting Hauter v. Zogarts, 14 Cal. 3d 104, 118 (1975)).

Where plaintiffs challenge food labels that are not preempted by Federal law and are otherwise allowed, courts refrain from dismissing implied warranty claims. Compare id. at 1118 (denying motion to dismiss claim brought against Nutella labeling), with Brod v. Sioux

Honey Ass'n, Co-op, No. C–12–1322 EMC, 2013 WL 752479, at *18 (N.D. Cal. Feb. 27, 2013) (granting motion to dismiss implied warranty claim where label claims were either preempted or otherwise regulated). Thus, for the claims that have otherwise survived Defendants' challenges as discussed above, this Court DENIES Defendants' motion.

## IV. CONCLUSION

The Court GRANTS <u>with leave to amend</u> the Motion to Dismiss for Plaintiffs' claims regarding website and print advertising. The Court also GRANTS the Motion to Dismiss <u>without leave to amend</u> to the extent Plaintiffs' claims for the Fiber product and a portion of their claims for the Antioxidant product are preempted as discussed in Part III.B. The Court GRANTS <u>with leave to amend</u> Plaintiffs' claims regarding the Fiber and B Vitamins products because Plaintiffs rely on lack of substantiation theories. Further, the Court GRANTS <u>without leave to amend</u> Plaintiffs' challenge to the Splenda Essentials name, but DENIES Defendants' motion to dismiss for failure to state a claim with respect to the non-preempted portions of the claims relating to the Antioxidant product. Lastly, the Court GRANTS <u>with leave to amend</u> the Motion to Dismiss for the Unjust Enrichment Claim, and DENIES the motion for the Breach of Implied Warranty of Merchantability Claim.

**IT IS SO ORDERED.**

Dated: April 16, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE